# EXHIBIT 2

Case No. 1:15-cv-02387-RPM Document 21-2 filed 11/28/16 USDC Colorado pg 1 of 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No._____

WELI A. FARAH,

    Plaintiff,

v.

JBS USA, LLC d/b/a JBS SWIFT COMPANY,

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Weli A. Farah, through undersigned counsel, OKUNADE, LLP, submits this Complaint and Jury Demand, and alleges as follows:

## I.    INTRODUCTION

1. This is an action to redress Defendant's unlawful intentional discrimination and employment practices against Mr. Farah, on the basis of race, color, and/or national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and 42 U.S.C. § 1981. As alleged with particularity below, Plaintiff contends that Defendant discharged him because of his race (African) and Somaliland ancestry.

2. Spread throughout the Horn of Africa, the people from Somalia are comprised of numerous clans who have been engulfed in conflict following the 1991 collapse of the Somali government and ensuing civil war, causing the northern Somaliland, a collectively distinct minority clan, to breakaway and declare unilateral independence from the Southern Somalian territory. As a result of the conflict and ongoing rivalry, many Somalians were displaced

throughout neighboring countries. To date, most Somalis continue to give greater political and emotional allegiance to their lineages.

## II. PARTIES

2. Plaintiff Weli Farah is a resident of the State of Colorado. Plaintiff was an employee of Defendant working, at all times pertinent to the allegations in this Complaint, as a Classroom Trainer at Defendant's Greeley, Colorado plant ("Greeley Plant").

3. Defendant JBS USA, LLC. ("JBS" or "Defendant") has continuously been an employer doing business in the State of Colorado and engaged in an industry affecting commerce within the meaning of 42 U.S.C. §§ 2000e(b), (g) and (h), and 42 U.S.C. § 1981. At all times relevant to the allegations in this Complaint, Defendant was the employer of Plaintiff within the meaning of Title VII and § 1981.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action arises under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et. seq*. and 42 U.S.C. § 1981.

5. The employment practices alleged to be unlawful were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

6. Prior to filing this Complaint, Plaintiff complied with all procedural prerequisites for bringing this lawsuit. On or about June 9, 2015, Mr. Farah timely filed a charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination, national origin discrimination, and retaliation against JBS.

2

7. In a letter dated July 29, 2015, the EEOC issued a Notice of Right to Sue ("Notice") notifying Mr. Farah that he had ninety days from the receipt of the Notice to file this Complaint. This Complaint has been filed within the ninety days. Therefore, under 42 U.S.C. § 2000e-5(f)(1), Plaintiff has satisfied all procedural prerequisites for suing in federal court.

## IV. FACTUAL ALLEGATIONS

8. Mr. Farah is a Somaliland-born male who was raised in the northwestern Somaliland region of Somalia and identifies as part of the Isaaq clan. He moved to the United States in 1994 and attended Community College of Denver. Mr. Farah speaks Somali, Swahili, and English, with a Somaliland accent.

9. JBS hired Mr. Farah in March of 2009 as a production level employee. Shortly thereafter, Mr. Farah was promoted to work within its Human Resources (HR) Department as a Classroom Trainer at its Greeley Plant. At the time of his termination, Mr. Farah was the Lead Trainer in charge of the second shift employees, which was also referred to as the B Shift.

10. Mr. Farah was the only individual from Somaliland that worked in the JBS HR Department at the Greeley Plant at the time he was fired.

11. A primary part of Mr. Farah's job duties included conducting new-hire orientation classes and keeping JBS employees up to date on annual re-training sessions.

12. In his role as the Lead Trainer, Mr. Farah often encountered and interacted with JBS employees who speak a number of different languages and dialects, many of which originate from Somalia.

13. To better provide training for the JBS employees, Mr. Farah often requested help from other JBS employees to assist with translation for the training sessions and other matters related to training.

3

14. Mr. Farah was a hard worker and he was well qualified to perform the duties of his position and he dutifully performed his job functions.

15. In October 2014, Mohammed Hassan, a/k/a Max, a Somalian from the Hawiye clan in Southern Somalia, became Director of HR, and Mr. Farah's treatment at JBS changed markedly.

16. Mr. Hassan's unfair treatment of Mr. Farah was based solely on Mr. Hassan's knowledge of Mr. Farah's race, Somaliland and Isaaq origin and ancestry.

17. Less than one week after Mr. Hassan began at the Greeley Plant, and without any justifiable reason, Mr. Hassan approached Brandon Sellers, Training Supervisor and Mr. Farah's supervisor at that time, and told him to "***get rid of Weli***."

18. When Mr. Sellers refused and told Mr. Hassan that Mr. Farah was one of his best employees, Mr. Hassan singled out Mr. Farah over the next several months, including requesting that Mr. Sellers reprimand Mr. Farah for alleged infractions for which other employees were not written up.

19. Mr. Farah communicated his unfair treatment to Mr. Sellers, as well as other managers, in an unsuccessful attempt to alleviate his harsh treatment by Mr. Hassan.

20. In or around January 2015, Mr. Sellers left JBS, leaving vacant the Training Supervisor position. Mr. Farah completed the application for the available position. Prior to submitting the application, Mr. Farah expressed his interest in the position with Mr. Hassan and conveyed his intention to apply for the position.

21. Despite Mr. Farah's qualifications and outstanding work record, Mr. Hassan told him not to bother applying for the Supervisor position because "***he was not educated enough.***"

22. Mr. Hassan also refused Mr. Farah any consideration of an increase in his salary because according to Mr. Hassan, Mr. Farah did not need any more money to send to "*his Hargeisa people*" who Mr. Hassan blamed for "*refusing to let [the displaced] refugees back into Somalia.*"

23. Disregarding Mr. Farah's protests to his unwarranted comments directed at his Somaliland and Isaaq ancestry and origin, Mr. Hassan continued to subject Mr. Farah to discriminatorily laced inquiries and comments in an effort to intimidate him.

24. Mr. Hassan persisted in his unwarranted inquiries into Mr. Farah's clan association with the Isaaq clan and why they wanted their own government, separate from the rest of Somalia.

25. On March 11, 2015, Mr. Farah was suspended by the HR Supervisor, Kaceem Andilda and Training Manager, Yuli Rocha, based upon unfounded allegations concocted against him. Mr. Farah was terminated two days later on March 13, 2015.

26. JBS hired another individual who is of the Hawiye clan in Southern Somalia to replace Mr. Farah.

## V. STATEMENT OF CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Race and National Origin Discrimination in Violation of Title VII)**

27. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

28. Plaintiff is a member of a protected class.

5

29. During Plaintiff's employment, Defendant, and its agents, engaged in unlawful discriminatory employment practices against Plaintiff with respect to the terms and conditions of Plaintiff's employment based on his race and national origin.

30. The unlawful employment practices include, without limitation, creating a negative and false record of his work at JBS, penalizing Plaintiff for alleged infractions for which other similarly-situated employees were not reprimanded, suspending him and predetermining his termination on false and discriminatory allegations, denying Plaintiff equal terms and conditions of employment and otherwise adversely affected his employment status because of his race and national origin.

31. The stated reasons for Defendant's conduct were not the true reasons, but instead were pretext to hid Defendant's and/or its agents' discriminatory animus.

32. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

33. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Plaintiff's federally protected rights.

34. Plaintiff suffered, and continues to suffer, irreparable injury as a result of Defendant's discriminatory action.

**SECOND CLAIM FOR RELIEF**
**(Race Discrimination in Violation of 42 U.S.C. § 1981)**

35. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

6

36. During Plaintiff's employment, Defendant, through its agents, intentionally engaged in unlawful discriminatory employment practices against him with respect to the terms and conditions of his employment based on his race.

37. The unlawful employment practices include, without limitation, creating a negative and false record of his work at JBS, penalizing Plaintiff for alleged infractions for which other similarly-situated employees were not reprimanded, suspending him and predetermining his termination on false and discriminatory allegations, denying Plaintiff equal terms and conditions of employment and otherwise adversely affected his employment status because of his race.

38. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

39. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to Plaintiff's federally protected rights.

40. Plaintiff suffered, and continues to suffer, irreparable injury as a result of Defendant's discriminatory action.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendant, and award him the following relief, to the fullest extent allowed by law:

(a) Back pay and related compensation, and front pay, in amounts to be determined at trial;

(b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation in the Somali community, humiliation, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

7

(c) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(d) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(e) Pre and post-judgment interest at the highest lawful rate.

(f) Appropriate declaratory and other injunctive and/or equitable relief;

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 27th day of October 2015.

Respectfully submitted,

OKUNADE, LLP

*s/Temitayo O. Okunade*
**Temitayo O. Okunade**
Okunade, LLP
10200 E. Girard Avenue
Suite C250
Denver, Colorado 80231
Telephone: (303) 440-7855
Facsimile: (303) 416-8800
E-mail: tayo@okunadellp.com
*Attorney for Plaintiff Mr. Farah*

Plaintiff's Mailing Address:
Weli Farah
1518 11th Street, Apt. 6
Greeley, CO 80631

8